Dana Bobroff, (AZ Bar # 019682)
Deputy Attorney General
Paul Spruhan (NM Bar # 12513)
Assistant Attorney General
William Gregory Kelly (AZ Bar # 026843)
Attorney, Natural Resources Unit
Navajo Nation Department of Justice
P.O. Box 2010
Window Rock, Arizona 86515-2010
Tel (928) 871-6347; Fax (928) 871-6177
gregkelly@nndoj.org
*Attorneys for the Navajo Nation*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| THE NAVAJO NATION,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR; KENNETH SALAZAR, in his official capacity as Secretary of the Department of the Interior; THE NATIONAL PARK SERVICE; JONATHAN B. JARVIS, in his official capacity as Director of the National Park Service; and TOM O. CLARK, in his official capacity as Park Superintendent, Canyon de Chelly National Monument,<br><br>Defendants. | NO.<br><br>**COMPLAINT** |

Plaintiff, the Navajo Nation, by and through its attorneys, the Navajo Nation Department of Justice, alleges as follows:

## INTRODUCTION

1. This is an action brought against the United States, Department of the Interior, National Park Service "NPS", and NPS Superintendent Tom Clark based on NPS' ongoing violations of the Treaty of 1868 between the United States of America and the Navajo Tribe of Indians, 15 Stat. 667 (hereinafter "Treaty of 1868"), the Treaty of 1850, 9 Stat. 974, the Archeological Resources Protection Act ("ARPA"), P.L. 96-95, 16 U.S.C. §§ 470aa-470mm, and the Administrative Procedures Act ("APA"), P.L. 79-404, 5 U.S.C. §§ 500-596.

## PARTIES

2. Plaintiff is the Navajo Nation, a sovereign Indian Nation and federally recognized Indian Tribe whose reservation and tribal lands are located in the states of Arizona, New Mexico and Utah, and whose seat of government is Window Rock, Navajo Nation, Arizona.

3. Defendants are the United States Department of the Interior, the National Park Service within the Department of the Interior, Ken Salazar, in his official capacity as Secretary of the Department of the Interior, Jonathan B. Jarvis, in his official capacity as Director of the National Park Service, and Tom O. Clark, in his official capacity as Superintendent of Canyon de Chelly National Monument, National Park Service, Arizona.

## JURISDICTION AND VENUE

4. Plaintiff's claims arise under the laws of the United States, including the Administrative Procedures Act, 5 U.S.C. §§ 701-706, the Archaeological Resources

Protection Act, 16 U.S.C. §§ 470aa-mm, and the Treaty of 1868 between the United States of America and the Navajo Tribe, 15 Stat. 667. Jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1361, 28 U.S.C. § 2201 and 28 U.S.C. § 2202. The immunity of the United States is waived under 5 U.S.C. § 702. The requested relief is proper under 28 U.S.C. §§ 1361, 2201 and 2202, and 5 U.S.C. § 706.

5. Venue in this court is proper under 28 U.S.C. § 1391(e)(2). The human remains and cultural objects at the heart of this case were removed from the Navajo Reservation within the boundaries of the State of Arizona. Further, the remains and objects are currently located at a National Parks Service facility, the Western Archeology Conservation Center ("WACC"), in Tucson, Arizona.

## FACTUAL BACKGROUND

### Treaties between the Federal Government and Navajo Tribe

6. On June 1, 1868, after a long history of conflict between the federal government and the Navajo People (the "Diné"), authorized representatives of the United States and twenty-nine Navajo tribal headmen consummated the historic Treaty of 1868 between the United States of America and the Navajo Tribe of Indians, 15 Stat. 667 (hereinafter "Treaty of 1868"), establishing the original treaty reservation of the Navajo People.

7. The Treaty of 1868 and the Treaty of 1850, 9 Stat. 974, brought peace between the federal government and the Navajo Tribe of Indians, and to this date recognize and affirm the inherent sovereignty and right to self-government of the Navajo Nation.

8. Under the Treaty of 1868, the boundaries of the original treaty reservation specifically included Canyon de Chelly and its tributary Canyon del Muerto, and the Navajo Nation has recognized title to said canyons and all resources therein.

9. The Treaty of 1868 expressly provided that "the outlet of the Cañon-de-Chilly [sp.], *which cañon is to be all included in this reservation*, shall be, and the same is hereby, set apart for the use and occupation of the Navajo tribe of Indians . . . [and] the tribe . . . agree[s] to make the reservation herein described their permanent home." *Id.*

10. That Canyon de Chelly was specifically included, *and named*, in the Treaty of 1868 demonstrates that these particular lands were and remain extremely important to the Navajo People; indeed, they constitute the very heart of the Navajo homeland ("Dinébikeyah"), which is bounded by the four sacred mountains of the Navajo People.

11. Canyon de Chelly and its tributary Canyon del Muerto have extraordinary cultural and historical significance to the Diné, ranging from the creation stories in the Canyons concerning Spider Woman, to the massacre there by federal troops in the round-up preceding the internment at Fort Sumner.

**Establishment of Canyon de Chelly National Monument**

12. On July 8, 1930, approximately sixty years after establishment of the original treaty reservation by the Treaty of 1868, the Navajo Nation Council approved the establishment of the Canyon de Chelly National Monument ("Monument") in the heart of Dinébikeyah.

13. The Monument was formally established by Act of Congress of Mar. 1, 1933, 47 Stat. 2448 (the "Monument Act"), 16 U.S.C. §§ 445 – 445b, and included within its boundaries the lands of Canyons de Chelly and del Muerto, and Monument Canyons, and the lands within one-half mile of the rims of those canyons.

14. The precise language of the Monument Act, and which the Navajo Nation Council expressly approved in advance of its passage by Congress, specifically provided that "[n]othing herein shall be construed *as in any way impairing the right, title, and interest of the Navajo Tribe of Indians* which they now have and hold to all lands and minerals, including oil and gas, and the surface use of such lands for agricultural, grazing, and other purposes, *except as defined in section 445b of this title*."

15. Section 445b of the Monument Act provides that the National Park Service ("NPS"),

> under the direction of the Secretary of the Interior, is charged with the *administration* of the area so far as it applies to the care, maintenance, preservation and restoration of the prehistoric ruins, or other features of scientific or historical interest within the area, and shall have the right to construct upon the lands such roads, trails, or other structures or improvements as may be necessary in connection with the administration and protection of the monument, and also the right to provide facilities of any nature whatsoever required for the care and accommodation of visitors to the monument.

**Removal of Human Remains and Cultural Objects Without the Nation's Permission**

16. Since the establishment of the National Monument, without seeking or obtaining consent or permission of the Navajo Nation government, and contrary to

Diné spiritual, religious and cultural practice, NPS has dug up and carried off human remains, and cultural objects, from Canyon de Chelly and Canyon del Muerto, and put them in its "collection."

17. The Navajo people believe that:

a. The natural world is an intricately connected and interdependent web of relationships, a great kinship which includes human beings, human culture, and ceremony (in the Navajo language this is called *k'é*).

b. In accordance with *k'é* and natural law, when human beings die they are placed into the earth.

c. It is deeply disrespectful and harmful to the integrity of the world to exhume human remains from their resting place.

d. In the Navajo world view, exhuming human remains causes illness to human beings, including depression, arthritis, and family and intertribal disharmony, damages crops, natural ecosystems and the environment, and disrupts local and global weather patterns.

18. By agreeing to the establishment of the Canyon de Chelly National Monument, the Navajo Nation Council would never have agreed, and did not agree, that the National Park Service, or any other party, was thereby allowed to exhume and carry off human remains and sacred and other cultural objects located on or in the Monument.

19. Such an arrangement would have directly contradicted Navajo cultural, religious and spiritual belief, would have been wholly inconsistent with the historical

and cultural significance of Canyon de Chelly to the Navajo People, and would have violated the responsibility of the Navajo Nation Council to the Navajo People and Navajo homeland under Navajo Fundamental Law.

20. To this day NPS continues to unlawfully exercise dominion and control over these remains and objects, among the most sacred of the Nation's property.

21. In the late 1980s, the Navajo Nation Historic Preservation Department gave permission to NPS to disinter approximately six individuals whose graves were being eroded on the condition that the remains be immediately reinterred.

22. Instead of complying with the Nation's wishes, the NPS simply added these remains to its collection.

**NAGPRA Inventory and Cultural Affiliation Disposition Process**

23. At least three hundred and three (303) separate sets of human remains, along with cultural objects, removed from the heart of the Navajo homeland and treaty reservation are currently in NPS' physical custody at its Western Archeology Conservation Center ("WACC") in Tucson, Arizona.

24. In approximately 1996, in spite of demands by the Navajo Nation Historic Preservation Department ("HPD") that these remains and objects be returned to the Navajo Nation, NPS began an inventory of them pursuant to the Native American Graves Protection and Repatriation Act ("NAGPRA") P.L. 101-601, 25 U.S.C. §§ 3001 *et seq*.

25. It is the stated intention of the NPS to repatriate these remains and objects to some Indian tribe pursuant to NAGPRA.

26. Recently, NPS has begun a cultural affiliation process pursuant to NAGPRA to dispose of the remains and objects at issue in this case, and yet again over the repeated objections of the HPD and the Nation's demand that these remains and objects be returned to the Nation.

27. NPS intends to culturally affiliate and repatriate the 303 remains and objects to either the Hopi, Zuni, or Navajo tribes, or potentially some other tribe, even where all of the remains and objects were removed from the original treaty lands of the Navajo Nation and are the property of the Navajo Nation.

28. To protect its rights, the Nation is participating in the NAGPRA process for these remains and objects but continues to object to it.

29. The Nation has given NPS notice and an opportunity to cease its harmful conduct.

30. After repeated objections of HPD went unheeded by NPS, on August 9, 2011, the Navajo Nation Department of Justice sent a written notice of its intent to sue the NPS to Tom O. Clark, Park Superintendent, Canyon de Chelly National Monument.

31. In that letter, the Navajo Nation demanded that NPS immediately cease the NAGPRA cultural affiliation and disposition process for all remains and objects taken from Canyons de Chelly and del Muerto, and that NPS immediately make arrangements to return the remains and cultural objects to the Navajo Nation.

32. The Navajo Nation gave NPS until September 12, 2011, to comply, after which time the Navajo Nation indicated it would file suit in federal district court to compel the NPS to return the remains and cultural objects, and to seek other relief.

33. The Nation notified NPS that it would bring suit pursuant to the Treaties of 1850 and 1868 between the Navajo Tribe and the United States, the Archeological Resources Protection Act ("ARPA"), P.L. 96-95, 16 U.S.C. §§ 470aa-470mm, and the Administrative Procedures Act ("APA"), P.L. 79-404, 5 U.S.C. §§ 500-596. *See id.*

34. By letter of September 7, 2011, NPS has formally indicated in writing that it has no intention to comply with the Nation's wishes and that it will continue with the NAGPRA disposition process for the remains and objects taken from Canyons de Chelly and del Muerto.

**Applicable Law**

35. Pursuant to the Treaty of 1868, the Navajo Nation has held recognized title to the lands of Canyons de Chelly and del Muerto, and all their archeological resources, since 1868.

36. The ARPA controls the disposition of archeological resources from tribal lands prior to the enactment of NAGPRA, unless the federal agency or museum can demonstrate that it has lawful possession or control of remains and cultural objects in its physical custody.

37. NPS removed the remains and objects at issue here from Navajo Nation tribal lands before the enactment of NAGPRA.

38. In order for a federal agency or museum to carry out the NAGPRA cultural affiliation and disposition process, where applicable, it must be able to show that it has lawful possession and control of the items it is inventorying.

39. NPS does not have lawful possession and control of the remains and cultural objects in this case, which remain the property of the Navajo Nation.

40. The ultimate disposition of human remains and cultural objects taken from tribal lands prior to the enactment of NAGPRA is subject to the consent of the Indian or Indian tribe which owns or has jurisdiction over such lands.

41. Congress has never alienated title to the Nation's archeological resources in Canyons de Chelly and del Muerto.

42. If title to the Nation's archeological resources in Canyons de Chelly and del Muerto was alienated by Act of Congress, including by the Antiquities Act of 1906, 16 U.S.C. §§ 431-433, by the Monument Act, or by NAGPRA, the Nation has never been compensated.

43. NPS cannot repatriate remains or items pursuant to NAGPRA where doing so would constitute a taking pursuant to the 5th Amendment to the Constitution.

44. As the administrator of the Canyon de Chelly National Monument, NPS has a unique fiduciary duty toward the Navajo Tribe and a special obligation to protect and preserve the Nation's cultural resources within the Monument boundaries.

45. Congress has never authorized NPS to dispose of archeological resources on Navajo Nation lands without the Nation's consent, and over its express objections.

46. At most, NPS has been authorized by Congress to *temporarily* remove remains and cultural objects from the Monument in order to preserve or protect them.

47. NPS has never obtained the voluntary consent of the Navajo Nation to treat the remains and objects it removed from Canyons de Chelly and del Muerto as part of its collection.

48. NPS has never obtained the voluntary consent of the Navajo Nation to dispose of the remains and objects through the NAGPRA inventory, cultural affiliation, and disposition processes.

**COUNT ONE**
**VIOLATION OF THE TREATIES OF 1850 AND 1868**

49. Paragraphs 6 through 48 are incorporated herein in their entirety.

50. NPS is in violation of the Treaty of 1868 by treating Navajo Nation property held under recognized title as the property of NPS.

51. NPS is in violation of the Treaties of 1850 and1868 by interfering with Navajo self-government and sovereignty, and by violating the Nation's religious, cultural and spiritual practices.

**COUNT TWO**
**BREACH OF FIDUCIARY DUTY**

52. Paragraphs 6 through 48 are incorporated herein in their entirety.

53. Where NPS has a general trust obligation to the Navajo tribe, and a special fiduciary duty to guard and protect the Nation's resources inside the Canyon de Chelly Monument, NPS is in breach of its fiduciary duty to the Navajo Nation.

**COUNT THREE**
**VIOLATION OF ARPA**

54. Paragraphs 6 through 48 are incorporated herein in their entirety.

55. NPS is in violation of the ARPA where NPS is attempting, without the Nation’s consent, to dispose of human remains and cultural objects taken from Navajo tribal lands prior to the enactment of NAGPRA.

**COUNT FOUR**
**VIOLATION OF THE CONSTITUTION**

56. Paragraphs 6 through 48 are incorporated herein in their entirety.

57. If the District Court determines that the Antiquities Act of 1906 transferred title to archeological resources on the Navajo Nation’s treaty lands to the United States, then such Act is of no effect as a violation of the 5th Amendment of the United States Constitution.

58. If the District Court determines that the Monument Act transferred title to the archeological resources in the Canyon de Chelly National Monument to the United States, then such Act is of no effect as a violation of the 5th Amendment of the United States Constitution.

59. If the District Court determines that the NAGPRA transferred title to archeological resources taken from Canyon de Chelly National Monument by NPS, to the United States or any other entity, title which is recognized under the ARPA and the Treaty of 1868, then such Act is of no effect as a violation of the 5th Amendment of the United States Constitution.

**COUNT FIVE**
**VIOLATION OF THE APA**

60. Paragraphs 6 through 59 are incorporated herein in their entirety.

61. NPS is in violation of the APA where it is acting contrary to its obligations under the Treaties of 1850 and 1868.

62. NPS is in violation of the APA where it is in breach of its fiduciary duty to the Navajo Nation by attempting to dispose of Navajo Nation property without its consent and to the detriment of the Nation.

63. NPS is in violation of the APA where it is unlawfully withholding agency action required under the ARPA, i.e. to coordinate with the Navajo Nation and obtain the Nation's consent in the disposition of remains and cultural objects taken from the Nation's tribal lands.

64. NPS is in violation of the APA where it is acting contrary to the constitutional rights of the Navajo Nation under the 5th Amendment to the United States Constitution.

65. NPS is in violation of the APA where it is acting in excess of its statutory authority under NAGPRA.

**CLAIMS FOR RELIEF**

Wherefore, the Navajo Nation prays for judgment and seeks relief against the Defendants as follows:

a. A permanent injunction prohibiting the NPS from carrying out any further inventory, cultural affiliation, or disposition processes pursuant to NAGPRA for

human remains and cultural objects, or any other archeological resources as defined under ARPA, where such archeological resources came from Canyons de Chelly and del Muerto, or other lands within the Canyon de Chelly National Monument;

b. A permanent injunction prohibiting the NPS from removing any human remains or cultural objects from Canyon de Chelly National Monument, without the express written consent of the Navajo Nation government;

c. A declaratory judgment that all human remains, cultural objects, and other archeological resources as defined under the ARPA, and located within Canyon de Chelly National Monument, or originating from Canyon de Chelly National Monument, are the property of the Navajo Nation, and that NPS does not have possession or control of any such remains or objects for the purposes of NAGPRA;

d. A mandatory injunction that NPS immediately arrange for, and cooperate in, the orderly repatriation of any and all human remains and cultural objects, and any other archeological resources as defined under the ARPA, which were removed from Canyon de Chelly National Monument, and which are in the physical custody of NPS;

e. If the District Court determines that any Act of Congress, including the Antiquities Act of 1906, the Monument Act, or NAGPRA, transferred title to the human remains and cultural objects taken from the Canyon de Chelly National Monument by NPS, to the United States, for a declaratory judgment that said Acts are of no effect and void for violation of the 5th Amendment to the Constitution; and

f. For such other relief as the Court may deem just and proper.

Dated this 16th day of December, 2011.

Respectfully Submitted,

Dana Bobroff, AZ Bar # 019682
Deputy Attorney General

Paul Spruhan, NM Bar # 12513
Assistant Attorney General

*/s/ William Gregory Kelly*
William Gregory Kelly, AZ Bar # 026843
Attorney, Natural Resources Unit
Navajo Nation Department of Justice
P.O. Box 2010
Window Rock, Arizona 86515-2010
Tel (928) 871-6347; Fax (928) 871-6177
gregkelly@nndoj.org
*Attorneys for the Navajo Nation*