ANN BIRMINGHAM SCHEEL,
Acting United States Attorney
BILL C. SOLOMON,
Assistant United States Attorney,
AZ Bar Number 020012
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004
Tel. (602) 514-7500
Fax (602) 514-7760

IGNACIA S. MORENO,
Assistant Attorney General
DEVON LEHMAN McCUNE, Trial Attorney
Colorado Bar No. 33223
United States Department of Justice
Environment and Natural Resources Division
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1487/Fax: (303) 844-1350
Email: Devon.McCune@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| THE NAVAJO NATION,<br><br>                    Plaintiff,<br><br>            vs.<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR; KEN SALAZAR, in his official capacity as Secretary of the Department of Interior; THE NATIONAL PARK SERVICE; JONATHAN B. JARVIS, in his official capacity as Director of the National Park Service; and TOM O. CLARK, in his official capacity as Park Superintendent, Canyon de Chelly National Monument,<br><br>                    Defendants. | No. CV 11-08205-PCT-PGR<br><br><br>MOTION TO DISMISS AND SUPPORTING MEMORANDUM |

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Federal Defendants respectfully move to dismiss Plaintiff Navajo Nation's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, 12(b)(6) for failure to state a claim upon which relief can be granted, and 12(b)(7) for failure to join an indispensible party.

## SUPPORTING MEMORADUM

Plaintiff challenges the Federal Defendants' administration of archaeological resources, including human remains and associated funerary objects (hereinafter "remains"), originating in Canyon de Chelly National Monument ("CACH"). Plaintiff argues, contrary to established federal law, that all remains recovered in CACH belong to Plaintiff, even though such remains may be culturally affiliated with other tribes.

This suit is not properly before the Court. Plaintiff has failed to identify a final agency action sufficient to waive the United States' sovereign immunity or provide jurisdiction under the Administrative Procedure Act ("APA") 5 USC § 551 *et seq*. And any agency action is time-barred, accruing at the latest in 1996. Similarly, Plaintiff lacks standing and its claims are not ripe because the agency has not completed its administrative process. Further, even if this case were properly before this Court, Plaintiff nonetheless fails to state a claim upon which relief could be granted. And finally, other tribes that are not parties have a considerable interest in the outcome of this case, but cannot be joined. For these reasons this case should be dismissed.

## BACKGROUND

I.  **Factual Background**

In 1868, the United States and the Navajo signed a treaty that established the Navajo Reservation. 15 Stat. 667 ("1868 Treaty"); Compl. ¶ 6. The reservation, as established in the 1868 Treaty, included Canyon de Chelly, which has "extraordinary cultural and historical significance to the" Plaintiff. Compl. ¶¶ 8, 11.

In 1930, the Navajo Nation approved the establishment of Canyon de Chelly National Monument. *Id.* ¶ 12. CACH was then authorized by Congress in 1931 and established by presidential proclamation in 1933. *See* 46 Stat. 1161, 16 U.S.C. §§ 445–

445b (the "Monument Act"); 47 Stat. 2448; Compl. ¶ 13. One of the primary purposes of the Monument Act was to prevent the loss of archeological and historic resources contained within CACH. *See* H.R. Rep. No. 71-2397, at 1 (1931).

The Monument Act declares that "[n]othing herein shall be construed as in any way impairing the right, title, and interest of the Navajo Tribe of Indians which they now have and hold to all land and minerals, . . . *except* as defined in Section 445b of this title . . . ." (emphasis added). Section 445b explicitly charges NPS and the DOI with "administration" of the monument, and specifically with the "care, maintenance, preservation and restoration of the prehistoric ruins, or other features of scientific or historical interest within the area. . . ." 16 U.S.C. § 445b. Accordingly, although CACH is located within the exterior boundaries of the Navajo Reservation, NPS manages and administers CACH as a unit of the National Park System.

NPS is currently in possession of 303 remains and associated funerary objects collected over the last approximately 100 years from CACH. Compl. ¶ 23. NPS is undertaking a process of identification and repatriation of these remains pursuant to the Native American Graves Protection and Repatriation Act ("NAGPRA"), 25 U.S.C. §§ 3003-3005, which provides a comprehensive scheme for repatriation of such items NPS intends to repatriate the remains to the proper tribe pursuant to NAGPRA. *Id.* ¶¶ 24–27. Plaintiff is participating in the NAGPRA process. *Id.* ¶ 28.

In 1996, Plaintiff demanded the NAGPRA process cease and that NPS give the remains to Plaintiff. *Id.* ¶ 24. NPS did not comply with this demand, but continued to inventory the remains and determine their cultural affiliation for purposes of repatriation. *Id.* ¶ 26–27. On August 9, 2011, Plaintiff sent a written notice of its intent to sue NPS, demanding again that NPS immediately cease the NAGPRA process for all remains taken from CACH and deliver them to Plaintiff. *Id.* ¶ 30–31. NPS replied by letter that it would not do this and instead would continue to pursue the NAGPRA repatriation process. *Id.* ¶ 34.

Plaintiff brought suit in this Court on December 16, 2011, alleging that Federal Defendants are in violation of the treaties of 1850 and 1868, of the

Archaeological Resources Protection Act ("ARPA"), 16 U.S.C. §§ 470aa-470mm, the Fifth Amendment of the United States Constitution, and the APA. Specifically, Plaintiff asserts five claims for relief. Count One asserts that Federal Defendants violated the treaties by interfering with Navajo self government and sovereignty, and by violating the Nation's religious, cultural and spiritual practices. Compl. ¶¶ 49–51. Count Two asserts that the Federal Defendants breached their fiduciary duty to the Plaintiff. *Id.* ¶¶ 52–53. Count Three asserts that the Federal Defendants violated ARPA by allegedly disposing of remains without the Tribe's consent. *Id.* ¶¶ 54–55. Count Four asserts that the Federal Defendants violated the Fifth Amendment through the 1906 Antiquities Act, the Monument Act, and NAGPRA if such acts transferred title of archeological resources in the CACH to the United States. *Id.* ¶¶ 56–59. Count Five asserts that the Federal Defendants violated the APA. *Id.* ¶¶ 60–65.

## II.   Statutory Background

### A.   The 1906 Antiquities Act

The 1906 Antiquities Act established permitting authority for scientific data recovery on federal and Indian lands. 16 U.S.C. § 431-33. This Act delegated to the Secretaries of Interior, Agriculture, and War (now Defense) the power to authorize the removal of "objects of antiquity" from land under their respective jurisdictions. 16 U.S.C. § 432. From 1906 to 1979, DOI issued Antiquities Act permits to qualified individuals for the removal of objects of antiquity from lands under the jurisdiction of DOI, including Indian lands. *See* 43 C.F.R. 3.1; 49 Fed. Reg. 1016, 1019. Permits for Indian lands did not require the consent of the Indian landowner and many authorized the removal of such objects. *See* 43 C.F.R. 3.5. And the Antiquities Act is silent as to who "owns" "objects of antiquity" removed pursuant to the statute.

### B.   ARPA

ARPA was enacted in 1979 with the goal of protecting "archaeological resources" (including remains) "on public lands and Indian lands." 16 U.S.C. § 470aa. ARPA prohibits the excavation or removal of archaeological resources located on public lands and Indian lands unless done in accordance with a permit or exempted under the Act or

implementing regulations. *Id.* at § 470cc. Unlike the Antiquities Act, ARPA expressly provides that "the archaeological resources which are excavated or removed from public lands will remain the property of the United States…." 16 U.S.C. § 470cc(b)(3).

In 1995, the ARPA regulations were amended to implement the requirements of NAGPRA, which are discussed further below. 43 C.F.R. § 7.13. These regulations provide that "[a]rcheological resources excavated or removed from Indian lands remain the property of the Indian or Indian tribe *having rights of ownership over such resources*" and the Secretary of the Interior may "promulgate regulations providing for . . . the ultimate disposition of archeological resources . . . when such resources have been excavated or removed from public lands and Indian lands." 43 C.F.R. §§ 7.13(b) (emphasis added), (c). These regulations explicitly provide that "Federal land manager[s] will follow the procedures required by NAGPRA and its implementing regulations for determining the disposition of Native American human remains and other 'cultural items' as defined by NAGPRA . . . " from public lands. *Id.* § 7.13(e). The Bureau of Indian Affairs ("BIA") has promulgated specific regulations that confirm the application of NAGPRA to archaeological resources that comprise human remains and other NAGPRA cultural items from Indian lands. *See* 25 C.F.R. § 262.8(a); 58 Fed. Reg. 65246, 65248.

**C.    NAGPRA**

NAGPRA, *inter alia*, creates procedures through which lineal descendants and culturally affiliated tribes can recover remains and cultural objects from federal agencies. This repatriation process can proceed on two different tracks, depending on when the remains were discovered. Section three of NAGPRA addresses remains discovered and excavated from federal and tribal lands after NAGPRA's enactment on November 16, 1990. 25 U.S.C. § 3002(a)–(d). Sections five through seven apply to cultural items already in the "possession or control" of federal agencies as of the date of enactment. 25 U.S.C. §§ 3003–3005.

Under section seven, which applies here because the remains were not excavated or discovered after November 16, 1990, repatriation is based upon (1) lineal descent and (2) cultural affiliation. 25 U.S.C. § 3005(a)(1). Federal agencies having "possession or control" of these items must thus repatriate such items to potential lineal descendants or

Indian tribes that are culturally affiliated with the items, after consultation. 25 U.S.C. § 3005(a)(1); 43 C.F.R. §§ 10.9–10.10. NAGPRA's legislative history indicates that Congress recognized "that there may be circumstances where human remains or objects found on one Indian tribe's lands may be culturally affiliated with a different Indian tribe." S. Rep. No. 473, 101st Cong., 2d Sess. 1, 9 (1990).

## LEGAL STANDARD

Federal court jurisdiction is limited, present only where authorized by statute or the Constitution. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Once challenged, the burden of establishing a federal court's subject matter jurisdiction rests on the party asserting jurisdiction. *Id*. If a plaintiff cannot meet this burden, the case should be dismissed. *See High Country Res. v. F.E.R.C.*, 255 F.3d 741, 747 (9th Cir. 2001). When deciding a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider evidence outside of the complaint without converting the motion to dismiss into a motion for summary judgment. *See McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.1988).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Iqbal* and *Twombly* endorse a "two-pronged" approach to deciding a motion to dismiss, under which a court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Next, if any well-pleaded allegations remain, the court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Rule 12(b)(7) provides for dismissal for failure to join a party under Rule 19. In deciding a motion to dismiss for failure to join a party, the court may consider material outside the pleadings. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

# ARGUMENT

## I. The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims.

### A. Plaintiff Has Failed to Identify a Final Agency Action.

Although 28 U.S.C. 1331 confers federal question jurisdiction, "the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980)) ("*Mitchell I*") (citation omitted). Moreover, "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Id.* (quoting *United States v. King*, 395 U.S. 1, 4 (1969)). Consequently, district court jurisdiction cannot be based on § 1331, unless some other statute waives sovereign immunity. *Id.* The only waiver of sovereign immunity Plaintiff alleges here is the APA.[1]  *See* Compl. ¶ 4.

Section 702 of the APA contains a limited waiver of sovereign immunity: "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. An agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Section 704 imposes limitations on which agency actions are subject to judicial review. It provides that agency actions are subject to judicial review only when agency action is "made reviewable by statute" or when it constitutes "final agency action for which there is no other adequate remedy in a court."[2]  5 U.S.C. § 704. No other statute

---

[1] All of Plaintiff's claims must rely on the waiver of sovereign immunity in the APA. The APA was enacted to provide a uniform vehicle for courts to review all types of challenges to agency action, including constitutional claims. *See Dickinson v. Zurko*, 527 U.S. 150, 155 (1999); 5 U.S.C. 706(2)(B) (allowing courts to set aside agency action that is "contrary to constitutional right, power, privilege, or immunity"). Further, NAGPRA does not provide an independent waiver of sovereign immunity. *San Carlos Apache Tribe v. United States*, 272 F.Supp.2d 860, 886 (D. Ariz. 2003) ("The APA waives the sovereign immunity of the Government for NAGPRA claims."). Nor do the jurisdictional statutes cited. *Pit River Home and Agr. Co-op. Ass'n v. U.S.*, 30 F.3d 1088, 1098, n. 5 (9th Cir. 1994) (28 U.S.C. §§ 1331, 1361); *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) (28 U.S.C. §§ 2201-02). Nor does the Constitution. *Grondal v. United States*, 682 F. Supp. 2d 1203, 1218 (E.D. WA 2010). Nor do the treaties cited, as they contain no specific language waiving the sovereign immunity of the United States. *See United States. v. Seminole Nation,* 299 U.S. 417, 421–25 (1937).

[2] In *Gallo Cattle Co. v. U.S. Dept. of Agriculture*, 159 F.3d 1194, 1198 (1998), the Ninth Circuit held Section

1  provides for judicial review of the agency action at issue. Accordingly, the "action"
2  challenged by Plaintiff is reviewable under the APA only if it constitutes "final agency
3  action for which there is no other adequate remedy in court." *Id.*

### 1.     The NAGPRA Process has not Concluded.

Here, Plaintiff fails to allege final agency action because the NPS has not concluded the administrative process pursuant to NAGPRA. The APA specifies that agency action is not final if the agency provides for an administrative process for addressing the given claim. 5 U.S.C. § 704; *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (finding that agency action is not final for purposes of Section 704 until "an aggrieved party has exhausted all administrative remedies expressly prescribed by statute or agency rule"); *Stock W. Corp. v. Lujan*, 982 F.2d 1389, 1393–94 (9th Cir. 1993). "To be 'final,' an agency action 'must mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature.'" *Hells Canyon Pres. Council v. U.S.F.S.,* 593 F.3d 923, 930 (9th Cir. 2010) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). The agency action must also be one "'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* (quoting *Bennett*, 520 U.S. at 178).

NAGPRA clearly provides for an administrative process under which the agency decides to whom remains should be repatriated. *See* 25 U.S.C. § 3005. Plaintiff acknowledges that "NPS has begun a cultural affiliation process pursuant to NAGPRA to dispose of the remains and objects at issue in this case." Compl. ¶ 26. Plaintiff also acknowledges that NPS has not yet concluded this process. *Id.* ¶¶ 26–34. Thus there has not yet been a final agency action. NPS has not determined any rights or obligations at this time. *See Hells Canyon,* 593 F.3d at 930. Indeed, NPS could ultimately decide to repatriate the remains at issue to Plaintiff, obviating the need for this suit.

---

704's "final agency action" requirement works to limit Section 702's waiver of sovereign immunity. However, an earlier panel had held that this requirement does not further limit Section 702's waiver in the context of constitutional claims. *See Presbyterian Church v. United States*, 870 F.2d 518, 525 (9th Cir. 1989). That question and its relation to the *Gallo Cattle* opinion are currently before the Ninth Circuit *en banc*. *See Veterans for Common Sense v. Shinseki*, 663 F.3d 1033 (9th Cir. 2011) (granting rehearing *en banc* for opinion reported at 644 F.3d 845 (9th Cir. 2011)).

Federal Defendants' Motion to Dismiss - Case No. CV 11-8205            -7-

1    Even if a suit is ultimately necessary, requiring exhaustion of the administrative
2 process is nonetheless desirable as it serves "the twin purposes of protecting
3 administrative agency authority and promoting judicial efficiency." *McCarthy v.*
4 *Madigan*, 503 U.S. 140, 145 (1992).  The exhaustion requirement also allows the
5 agency to give a definitive answer and reasoned explanation for its decision and to
6 develop an administrative record for the court's review.  *White Mountain Apache*
7 *Tribe v. Hodel*, 840 F.2d 675, 677 (9th Cir. 1988).
8    Whether a court should intervene in the NAGPRA process prior to a decision to
9 repatriate was addressed explicitly in *Na Iwi O Na Kupuna O Mokapu v. Dalton*, 894 F.
10 Supp. 1397 (D. Hawaii 1995).  As in this case, in *Na Iwi,* the plaintiff sued under
11 NAGPRA for return of remains.  The district court determined that because the agency had
12 not made a decision to repatriate the remains, there was no final agency action to challenge,
13 and accordingly, the plaintiff's claim was not ripe for review.  *Id.* at 1405 ("Until the
14 Federal Defendant repatriates the [remains at issue], there is no final agency action to
15 challenge.").  The court noted that "[t]his is precisely the type of administrative decision to
16 which exhaustion requirements and the ripeness doctrine are intended to apply" and that
17 "[j]udicial intervention prior to the agency's decision would disrupt the agency process
18 and result in a waste of judicial resources."  *Id.* at 1405–06.  The same is true here.

### 2.  NPS's Alleged Inaction is not Reviewable.

Similarly, though the APA allows review for inaction or unreasonable delay, the alleged inaction in this case is not reviewable because NPS has not withheld a discrete action it was required to take.  Therefore, there is no "final agency action" for purposes of review under the APA.

The APA defines "agency action" to include failure to act, and thus allows for review of inaction under Section 706(1).  However this section does not allow for review of *any* failure to act.  Rather, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. SUWA*, 542 U.S. 55, 64 (2004); *Defenders of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1099 (D. Ariz. 2009).  To satisfy that standard, a plaintiff must identify one of the

discrete agency actions in 5 U.S.C. § 551(13), and demonstrate that the action in question is one that is legally required. *See SUWA*, 542 U.S. at 61–63.

Here, Plaintiff alleges that NPS is in violation of the APA for "unlawfully withholding agency action required under the ARPA, i.e., to coordinate with the Navajo Nation and obtain the Nation's consent in the disposition of remains and cultural objects taken from the Nation's tribal lands." Compl. ¶ 63. The Complaint fails, however, to allege inaction on a duty NPS was *required* to take. ARPA contains no specific requirements for repatriation or disposition of archaeological resources or Antiquities Act resources, other than providing the Secretary of the Interior with the authority to promulgate regulations for disposition. 16 U.S.C. § 470dd. With respect to archaeological resources from Indian lands, ARPA regulations clearly state that remains will not be subject to any ARPA disposition requirements. 25 C.F.R. § 262.8. Thus, the actions which plaintiff seeks to compel are not legally required. *See SUWA* 542 U.S. at 65.

### B. Any "Final Agency Action" is Time-Barred.

If the Court finds NPS's actions sufficiently "final" to support review under the APA, this alleged final agency action is time-barred, as it falls outside the applicable statute of limitations. A statute of limitations "constitutes a condition on the waiver of sovereign immunity." *United States v. Mottaz*, 476 U.S. 834, 841 (1986) (quotation omitted)); *Marley v. United States*, 567 F.3d 1030, 1034 (9th Cir. 2009). If a claim is not filed against the United States within the applicable limitations period, the claim "is barred, unless [the plaintiff] can find a recognized reason to avoid this result." *Nesovic v. United States*, 71 F.3d 776, 778 (9th Cir. 1995) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990)).[3]

The statutory limitations period in 28 U.S.C. § 2401(a) applies to claims brought under the APA. *Hells Canyon Pres. Council v. U.S.F.S.*, 593 F.3d 923, 930 (9th Cir.

---

[3] Whether or not this statute is jurisdictional in the Ninth Circuit is unclear. *Compare Sisseton-Wahpeton*, 895 F.2d at 592 *with Cedars-Sinai Medical Center v. Shalala*, 125 F.3d 765, 770 (9th Cir. 1997); s*ee also Marley v. United States*, 567 F.3d 1030, 1034, 1036 n.3 (9th Cir. 2009) (holding that the limitations period in 28 U.S.C. § 2401(b) is jurisdictional and noting recent Supreme Court case finding identical language to be jurisdictional). Even if not jurisdictional, however, the failure to bring a claim in the applicable limitations period requires dismissal of this suit.

2010). The statute unequivocally states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). "A cause of action accrues when a plaintiff knew or should have known of the wrong and was able to commence an action based upon that wrong." *Wild Fish Conservancy v. Salazar,* 688 F. Supp. 2d 1225, 1233 (E.D. Wash. 2010) (citing *Shiny Rock Mining Corp. v. United States*, 906 F.2d 1362, 1364 (9th Cir. 1990)).

Here, Plaintiff's claims accrued when it became aware NPS had asserted possession or control under NAGPRA of remains removed from CACH. NPS clearly asserted possession or control of these remains by including them in its NAGPRA inventories at the latest in 1996, and Plaintiff was aware that NPS did so. *See* Compl. ¶ 24 ("In approximately 1996, in spite of demands by the Navajo Nation Historic Preservation Department ("HPD") that these remains and objects be returned to the Navajo Nation, NPS began an inventory of them pursuant to [NAGPRA]"). Plaintiff's claims, all of which are based on NPS's NAGPRA process, are thus barred as more than 6 years has passed from the date that the Navajo became aware it had a claim.

Therefore, each of Plaintiff's claims lacks a valid waiver of sovereign immunity and grant of jurisdiction. Without such a waiver, the Complaint must be dismissed.

### C. Plaintiff Lacks Standing.

For the same reasons that Plaintiff has failed to identify a final agency action, Plaintiff lacks standing to bring its claims. "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Because NPS has not yet completed the NAGPRA process and has not, therefore, determined to which tribe the remains will be repatriated, Plaintiff lacks an "injury in fact" and thus cannot show standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (To satisfy Article III's standing requirements, a plaintiff "must

show," *inter alia*, it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical). It is possible that upon the completion of the NAGPRA process, NPS will repatriate all the remains to Plaintiff, thus nullifying Plaintiff's claims. It is insufficient for Plaintiff to allege that there is a "realistic threat" that a challenged regulation will be applied in a way that harms it in the "reasonably near future." *Summers v. Earth Island Inst.*, 555 U.S. 488, 501–02 (quoting from dissent).

### D.     Plaintiff's Claims are not Ripe.

For the same reasons, Plaintiff's claims are not ripe. Ripeness is a doctrine of justiciability "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 58, n.18 (1993) (citations omitted). It is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967). In assessing ripeness a court considers: "(1) whether delayed review would cause hardship to the [plaintiff]; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998).

Applying the *Ohio Forestry* three-factor test, Plaintiff's claims clearly are not ripe for review at this time. Here, Plaintiff can properly bring a challenge to NPS's repatriation decisions when they are made. At the conclusion of the NAGPRA process, NPS will publish in the Federal Register a Notice of Inventory Completion, which represents the agency's decision on which tribes are affiliated with specific remains and objects. 25 U.S.C. § 3003(d). This Federal Register notice is the agency's official decision and triggers time frames for repatriation, and can be challenged via an APA suit. 25 U.S.C. §§ 3005, 3013. Plaintiff can demonstrate no hardship from allowing the agency to complete its process pursuant to NAGPRA. Similarly, judicial intervention

would certainly interfere with the ongoing administrative action. Plaintiff specifically requests relief—such as enjoining NPS from completing the NAGPRA process—that would cause NPS to cease or change its administrative process. And the Court could benefit from further factual development. At the least, the agency could compile an administrative record that would serve as the basis for the Court's review under the APA, giving the Court a basis to judge whether the NPS's actions were arbitrary or capricious.

Accordingly, all three factors in the ripeness analysis weigh in favor of dismissing Plaintiff's claims on both jurisdictional and prudential grounds. *See Na Iwi*, 894 F. Supp. at 1405–06 (finding that case was not ripe when agency had not yet made a repatriation decision and that "[j]udicial intervention prior to the agency's decision would disrupt the agency process and result in a waste of judicial resources"). It is possible that all remains will be repatriated to the Navajo pursuant to the NPS process and that factor alone justifies dismissal of the case.

## II. Plaintiff has Failed to State a Claim Upon Which Relief can be Granted.

### A. Plaintiff has Failed to Assert an Actionable Claim for Breach of Treaty or Fiduciary Duty.

Count One asserts that NPS violated the Treaties of 1850 and 1968 "by treating Navajo Nation property held under recognized title as the property of NPS," "by interfering with Navajo self-government and sovereignty, and by violating the Nation's religious, cultural and spiritual practices." Compl. ¶¶ 50–51. Count One fails to identify a specific provision of the treaty of 1868 or 1850 that has been violated. This, therefore, is within the category of "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth" and should be dismissed. *Iqbal*, 129 S. Ct. at 1950.

Similarly, Count Two references alleged breaches of fiduciary duty, but does not allege sufficient facts to establish the existence of any actionable fiduciary relationship between the federal government and Plaintiff, nor any specific provision of the treaty that has been violated. *See* Compl. ¶¶ 53–54. The Supreme Court recently reiterated that, though the relationship between the United States and Indian tribes has been described as a trust, "Congress may style its relations with the Indians a 'trust' without assuming all

the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compared to a trust relationship between private parties at common law." *United States v. Jicarilla Apache Nation,* 131 S.Ct. 2313, 2323 (2011) (citing *Mitchell I,* 445 U.S. at 542; *United States v. Mitchell,* 463 U.S. 206, 224 (1983) ("*Mitchell II*")).

In order to create liability based on the type of fiduciary relationship alleged by Plaintiff, courts require demonstration of specific statutes and regulations that "establish [the] fiduciary relationship and define the contours of the United States' fiduciary responsibilities." *Id.* at 2325 (quoting *Mitchell II,* 463 U.S. at 224). Accordingly, without "identify[ing] a specific, applicable, trust-creating statute or regulation that the Government violated . . . common-law trust principles [do not] matter." *Id.* (quoting *United States v. Navajo Nation,* 556 U.S. 287 (2009)). Here, Plaintiff has not identified a treaty or "specific, applicable, trust-creating statute or regulation" that the Government violated and therefore has failed to state a claim upon which relief can be granted for breach of fiduciary duty.

### B.     Plaintiff has Failed to State a Claim for Violation of ARPA.

Count three asserts "NPS is in violation of the ARPA where NPS is attempting, without the Nation's consent, to dispose of human remains and cultural objects taken from Navajo tribal lands prior to the enactment of NAGPRA." Compl. ¶ 55. This claim should be dismissed for failure to state a claim upon which relief can be granted because ARPA does not require the consent of the Indian landowner in this case. Instead, the ARPA regulations provide that NAGPRA governs the disposition of these archeological remains, and such disposition pursuant to NAGPRA does not require the consent of the Indian tribal landowner. 25 C.F.R. § 262.8.

In a section captioned "custody of archaeological resources," ARPA provides that the Secretary of the Interior may promulgate regulations "providing for . . . the ultimate disposition of such resources." 16 U.S.C. §470dd. This section also provides that "ultimate disposition under such regulation of archaeological resources excavated or removed from Indian lands shall be subject to the consent of the Indian or Indian tribe which owns or has jurisdiction over such lands." *Id*. The Secretary has promulgated these regulations, and they explicitly provide that "Ownership and right of control over

the disposition of human remains and funerary objects . . . shall be in accordance with . . . [NAGPRA]." 25 C.F.R. § 262.8(a).

Thus, the regulations implementing ARPA provide that the federal land manager shall follow the NAGPRA process, as NPS is currently doing. Therefore, NPS has not violated ARPA. Further, of the 303 remains at issue in this case, at most 14 were excavated after the enactment of ARPA. NPS has not, to date, made a decision regarding the ultimate disposition of the remains, and the claim is not ripe. *See* section I(D), *supra*.

### C. Plaintiff has Failed to Identify an Interest in Property that Could be the Subject of a Taking or Otherwise State a Claim for Violation of the Constitution.

Count Four argues that if the Court determines that the Antiquities Act, the Monument Act, or NAGPRA transferred title to archaeological resources taken from CACH then these laws are "of no effect as a violation of the Fifth Amendment of the United States Constitution." Compl. ¶¶ 56–58. Presumably this Count implicates the takings clause. Because Plaintiff does not have an interest that is implicated by the takings clause, this Count should be dismissed.

The Takings Clause of the Fifth Amendment provides that no "private property [shall] be taken for public use, without just compensation." U.S. Const. amend. V. This Clause does not provide that laws which take property are "of no effect." To the contrary, this amendment contemplates such laws and provides that they are only unconstitutional if they fail to provide for compensation. Thus in order to state a claim under the takings clause, a claimant must show that the United States took a private property interest for public use without just compensation. *See McIntyre v. Bayer*, 339 F.3d 1097, 1098-1101 (9th Cir. 2003).

It is "axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation." *Bair v. United States*, 515 F.3d 1323, 1327 (Fed. Cir. 2008) (quotation omitted); *Lucas v. S. Carolina Coastal Council,* 505 U.S. 1003 (1992). And "[t]he Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment." *Conti v. United States*, 291 F.3d 1334, 1340 (Fed. Cir. 2002). "Instead, 'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law,

define the dimensions of the requisite property rights for purposes of establishing a cognizable taking." *Id*. (quoting *Bd. of Regents*, 408 U.S. 564, 577 (1972)).

Plaintiff asserts a property interest in the remains. Compl. ¶ 39. But human remains and funerary objects are not private property under the Fifth Amendment. *Evanston Ins. Co. v. Legacy of Life*, 645 F.3d 739, 741 (5th Cir. 2011) (no property interest in a dead man's body in the usually recognized sense of word); *see* 22A Am. Jur. 2d Dead Bodies, § 3 ("At common law, there is no property right in the body of a deceased person."); 2 William Blackstone, Commentaries, 429 ("[T]hough the heir has a property in the monuments and escutcheons of his ancestors, yet he has none in their bodies"); 75 Fed. Reg. 12378, 12398 ("American common law generally recognizes that human remains cannot be owned."). Therefore they cannot be "taken."

Further, Plaintiff has failed to state a claim for relief because Congress provided a means for individuals to seek just compensation through the Tucker Act, 28 U.S.C. §§ 1346, 1491, which authorize a "suit in compensation . . . subsequent to the taking." *See Bay View Inc. v. AHTNA, Inc.,* 105 F.3d 1281, 1285 (9th Cir.1997).[4] And even if the remains at issue here were property, NPS has not asserted ownership over them, but is merely acting as custodian while trying to determine the proper recipient for the remains. In any event, Plaintiff's takings claim is also barred by the statute of limitations.

### III. Absent a Valid APA Claim Within the Court's Jurisdiction, Other Tribes are Required Parties that Cannot be Joined.

In the absence of a valid and exhausted APA claim that is not time-barred, adjudication of Plaintiff's claims amounts to a declaratory judgment that determines the rights of required parties that are not before this Court. Dismissal is appropriate because other tribes that have a potential interest in the remains at issue here and an interest in seeing the NAGPRA repatriation proceed have not been — and cannot be — joined. Specifically, the Hopi Tribe and Zuni Pueblo are potentially culturally affiliated with some of the remains and have an appreciable stake in this lawsuit. *See* Compl. ¶ 27 ("NPS intends to culturally affiliate and repatriate the 303 remains and objects to either

---

[4] For the same reasons, this Court lacks jurisdiction over Plaintiff's takings claim. *Bay View*, 105 F.3d at 1285.

the Hopi, Zuni, or Navajo tribes…."). The requested relief would impact the other tribes. *See* Claims for Relief ¶¶ a, c (seeking a permanent injunction prohibiting NPS from carrying out NAGRPA proceedings for objects originating from CACH, and declaratory judgment that all remains and other resources from CACH are Navajo property).

A party must be joined if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect that interest." F.R.C.P. 19(a)(1)(B). If such a person "cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the parties before it, or should be dismissed." F.R.C.P. 19(b).

Other tribes have a clear interest in this litigation, satisfying the requirement of Rule 19(a). Some remains in this area have previously been found to be culturally affiliated with tribes, including the Hopi and Zuni, who have historically lived in and around the area, and those tribes are currently involved in the NAGPRA process. *See* 74 Fed. Reg. 48779; *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (defining "interest" requirement broadly).

Without being parties to this suit, the nonparty tribes will not be able to assert their interest in continuing the NAGPRA process. *See* F.R.C.P. 19(a)(1)(B)(i). Nor will they be able to protect their interest in the remains that the Plaintiff seeks to have declared Navajo property. *See* Compl., Claim for Relief ¶ c.

Failure to join nonparty tribes will leave NPS subject to risk of incurring multiple or otherwise inconsistent obligations. *See* F.R.C.P. 19(a)(1)(B)(ii). If this Court were to order NPS to halt the NAGPRA process or to transfer not according to NAGPRA, but rather as Plaintiff requests, other tribes may bring suit. This would leave NPS at risk of incurring multiple or inconsistent obligations both by requiring NPS to ignore its mandates under NAGPRA and potentially from contradictory court decisions. This factor thus weighs in favor of finding that the nonparty tribes are required parties.

Because the nonparty tribes meet the criteria in Rule 19(a), and are thus are "required," the next step is to analyze whether they may be joined as a party. *Pit River Home & Agric. Co-op v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994). Absent an

unequivocal waiver of immunity, tribes are not subject to federal court jurisdiction. *Pan Am. Co. v. Sycuan Band of Mission Indians*, 884 F.2d 416, 418 (9th Cir. 1989). Plaintiff has not alleged that other tribes have waived their sovereign immunity from suit. Where, as here, joinder is impossible because a tribe enjoys sovereign immunity, the Court must consider "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." F.R.C.P. 19(b). In cases where a nonparty tribe meets the Rule 19(a) criteria, courts generally have concluded that the equities weigh in favor of dismissal rather than proceeding in the tribe's absence. *See Confederated Tribes of Chehalis v. Lujan*, 928 F.2d 1496, 1499 9th Cir. 1991) (noting that when necessary party is immune from suit, "there is very little need for balancing Rule 19(b) factors because immunity itself may be viewed as the compelling factor").

As discussed above, the nonparty tribes will suffer prejudice if the objects originating from CACH are transferred to Plaintiff without the nonparty tribes being able to assert their cultural, religious, and legal repatriation interests. *See* F.R.C.P. 19(b)(1); *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024–25 (9th Cir. 2002) (noting that prejudice to the absent party factor "largely duplicates the consideration that made a party necessary under Rule 19(a)"). Moreover, this Court cannot shape relief in a way that would not prejudice both the NPS's ability to perform its statutory duties under NAGPRA and the nonparty tribes' interest in this process. *See* F.R.C.P. 19(b)(2), (3).

Finally, Plaintiff will have an adequate remedy if the action is dismissed for nonjoinder in the NAGPRA process itself, in which Plaintiff has been participating. *See* Compl. ¶ 27. However, even if the Court finds this not to be a suitable alternative, the Court should still dismiss the case because the tribal interest in maintaining its sovereign immunity outweighs a plaintiff's interest in litigating its claim. *See Am. Greyhound*, 305 F.3d at 1025; *Dawavendewa v. Salt River Project*, 276 F.3d 1150 (9th Cir. 2002); *Pit River*, 30 F.3d at 1098. Thus, the case should be dismissed.

## CONCLUSION

For the foregoing reasons, the Federal Defendants request that this Court dismiss Plaintiff's Complaint.

Respectfully submitted this 2nd day of April, 2012.

>IGNACIA S. MORENO
>Assistant Attorney General
>
>  *s/ Devon Lehman McCune*
>DEVON LEHMAN McCUNE
>Trial Attorney
>U.S. Department of Justice
>Environment & Natural Resources Division
>Natural Resources Section
>999 18th St., South Terrace, Suite 370
>Denver, CO  80202
>(303) 844-1487 (tel.)
>(303) 844-1350 (fax)
>Devon.McCune@usdoj.gov

Of Counsel:
CARLA MATTIX
United States Department of the Interior
Office of the Solicitor
San Francisco, CA 94104

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2012 I filed the foregoing MOTION TO DISMISS AND SUPPORTING MEMORANDUM with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the parties of record in this matter.

DATED this 2nd day of April, 2012.

   s/ Karmen Miller
Karmen Miller, Paralegal Specialist