1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9

10   The Navajo Nation,                    )
                                           )
11               Plaintiff,                )      No. CV-11-08205-PCT-PGR
                                           )
12        vs.                              )
                                           )      ORDER
13   The United States Department of the   )
     Interior, et al.,                     )
14                                         )
                 Defendants.               )
15                                         )

16        Pending before the Court is the defendants' Motion to Dismiss (Doc. 13).

17   Having considered the parties' memoranda in light of the relevant record, the Court

18   finds that the motion should be granted to the extent that the Court finds that this

19   action is barred at this time by the doctrine of sovereign immunity.[1]

20   Background

21        This action stems from the long-standing desire of the plaintiff, the Navajo

22   Nation, to obtain the immediate repatriation of 303 sets of human remains and other

23

24        [1]

25           No party has asked for oral argument and the Court concludes that oral
     argument would not aid the decisional process.
26           The Court notes that it has intentionally discussed only those arguments
     raised by the parties that the Court considers to be necessary to the resolution of the
     pending motion.

associated cultural objects removed by the National Park Service ("NPS") from the Canyon de Chelly National Monument ("the Monument"), which is a unit of the NPS located within the exterior boundaries of the Navajo Reservation; the human remains and cultural objects at issue are currently being held by the NPS at its Western Archeology Conservation Center in Tucson, Arizona.    The plaintiff's complaint names as defendants the United States Department of the Interior, Kenneth Salazar, in his official capacity as the Secretary of the Department of the Interior, the NPS, Jonathan B. Jarvis, in his official capacity as the Director of the NPS, and Tom O. Clark, in his official capacity as the Superintendent of the Monument.  The complaint, which seeks the immediate return of the human remains and cultural items through the plaintiff's requests for declaratory and injunctive relief, alleges violations of the Treaty of 1850 and the Treaty of 1858 (Count One)[2], breach of fiduciary duty (Count Two)[3], violation of the Archaeological Resources Protection Act (Count Three)[4], violation of the Constitution (Count Four)[5], and violation of the Administrative

---

[2]

    Count One alleges that the NPS violated the treaties by interfering with the plaintiff's self-government and sovereignty and by violating its religious, cultural and spiritual practices.

[3]

    Count Two alleges that the NPS breached its special fiduciary duty to the plaintiff by failing to guard and protect the plaintiff's resources inside the Monument.

[4]

    Count Three alleges that the NPS has violated the Archaeological Resources Protection Act, 16 U.S.C. § 470aa *et seq.*, by attempting, without the plaintiff's consent, to dispose of human remains and cultural objects taken from the plaintiff's tribal lands prior to the enactment of the Native American Graves Protection and Repatriation Act.

[5]

    Count Four alleges that the defendants' actions violate the Fifth Amendment of the Constitution to the extent that the Court determines that the Antiquities Act of 1906, or the Canyon de Chelly Monument Act, or the Native

Procedure Act (Count Five)[6].

As set forth in the complaint, the Navajo Reservation was established by treaty in 1868; included within the reservation boundaries are the Canyon de Chelly and its tributary Canyon del Muerto, both of which have extraordinary cultural and historical significance to the Navajo people.  In 1930, the Navajo Nation Council approved the establishment of the Monument; the Monument was authorized by Congress in 1931, *see* 16 U.S.C. §§ 445-445b, and was formally established by presidential proclamation in 1933.  Specifically included within the Monument are all lands within Canyon de Chelly and Canyon del Muerto.  The legislation authorizing the creation of the Monument provides in part that "[n]othing herein shall be construed as in any way impairing the right, title, and interest of the Navajo Tribe of Indians which they now have and hold to all lands and minerals, including oil and gas, and the surface use of such lands for agricultural, grazing, and other purposes, except as defined in section 445b of this title[.]" 28 U.S.C. § 445a.  The legislation further provides that the NPS "is charged with the administration of [the Monument], so far as it applies to the care, maintenance, preservation and restoration of the prehistoric ruins, or other features of scientific or historical interest within the area[.]"

_____

American Graves Protection and Repatriation Act transferred title to the archaeological resources in the Monument to the United States.

[6]      Count Five alleges that the NPS is in violation of the Administrative Procedure Act by acting contrary to its obligations under the Treaties of 1850 and 1868, by breaching its fiduciary duty to the plaintiff by attempting to dispose of its property without its consent, by unlawfully withholding agency action required by Archaeological Resources Protection Act, *i.e.* by failing to coordinate with the plaintiff and obtain its consent in the disposition of human remains and cultural objects taken from the plaintiff's tribal lands, by acting contrary to the plaintiff's rights under the Fifth Amendment to the Constitution, and by acting in excess of its statutory authority under the Native American Graves Protection and Repatriation Act.

1   28 U.S.C. § 445b.

2       The complaint alleges that since the establishment of the Monument, the NPS

3 has dug up and carried off human remains and cultural objects from Canyon de

4 Chelly and Canyon del Muerto, all without seeking or obtaining the consent of the

5 plaintiff, and contrary to the spiritual, religious and cultural practice of the Navajo

6 people.   In approximately 1996, the NPS began an inventory of these human

7 remains and cultural objects in its collection pursuant to the Native American Graves

8 Protection and Repatriation Act ("NAGPRA"), 25 U.SC. § 3001 *et seq.,* despite the

9 demands by the Navajo Nation Historic Preservation Department that these items

10 had to be returned to the plaintiff because they are the property of the plaintiff

11 inasmuch as they were removed from the plaintiff's original treaty lands.   The NPS,

12 over the plaintiff's repeated objections, has recently begun a cultural affiliation

13 process pursuant to NAGPRA in order to repatriate the human remains and cultural

14 objects at issue to either the Navajo, Hopi, Zuni, or potentially some other tribe; the

15 plaintiff is participating in the NAGPRA process in order to protect its rights, while

16 continuing to object to the process.   On August 9, 2011, the Navajo Nation

17 Department of Justice sent a written notice to Superintendent Clark of the plaintiff's

18 intent to sue the NPS unless the NAGPRA process was immediately ceased and

19 arrangements were made to return the human remains and cultural objects to the

20 plaintiff.   In a responsive letter dated September 7, 2011, Superintendent Clark

21 stated that it was the position of the NPS that the repatriation of the human remains

22 and cultural objects could not be made prior to the completion of the tribal

23 consultation and cultural affiliation process mandated by NAGPRA.

24 Discussion

25       The defendants, which seek the dismissal of this action in its entirety on a

26

1   variety of grounds, initially argue that the adjudication of this action is barred

2   pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction due to the bar

3   of sovereign immunity. *See* F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent

4   a waiver, sovereign immunity shields the Federal Government and its agencies from

5   suit.")   The defendants assert, without contravention by the plaintiff, that all of the

6   plaintiff's claims must rely on the limited waiver of the United States' sovereign

7   immunity set forth in the Administrative Procedure Act ("APA"). *See* 5 U.S.C. § 702.

8   The defendants' position is that sovereign immunity has not been waived for any of

9   the plaintiff's claims because there has not been any final agency action or unlawful

10  inaction for purposes of the APA.[7]

11          A.  Final Agency Action

12          When a claim is brought pursuant to the general review provisions of the

13  APA[8], sovereign immunity is waived when the challenged federal agency action

14  constitutes a "final agency action for which there is no other adequate remedy in a

15  court[.]" 5 U.S.C. § 704.  The plaintiff, which bears the burden of establishing that its

16  claims are now justiciable, argues that the final agency action that is reviewable

17  under the APA is the NPS' decision, as set forth in Superintendent Clark's letter of

---

18          [7]

19              The Court notes that the plaintiff does not argue that its constitutional

20  claims, whether individually raised or imbedded in its APA claim, are exempt from
    the limitations on the waiver of sovereign immunity imposed by 5 U.S.C. § 704.

21  See Gallo Cattle Co. v. U.S. Dept. of Agriculture, 159 F.3d 1194, 1198 (9th Cir.
    1998) (Court concluded that the "final agency action" requirement imposed by §

22  704 is a limitation on the waiver of sovereign immunity granted by § 702).

23          [8]

24              The Court notes that neither party argues that the agency action in
    question is made reviewable by specific authorization in a substantive statute.

25

26

1  September, 2011, whereby the NPS rejected the plaintiff's demand for the

2  immediate return the human remains and cultural objects at issue to it based on the

3  NPS' opinion that it was legally required to complete the NAGPRA process before

4  repatriation could occur notwithstanding the plaintiff's non-consent to that process.

5  The defendants argue that there has not yet been a reviewable final agency action.

6  The Court agrees with the defendants.

7      NAGPRA, which was enacted by Congress subsequent to the enactment of

8  Archaeological Resources Protection Act ("ARPA"), in part to specifically protect

9  tribal burial sites and rights to items of tribal cultural significance, including Native

10  American remains, funerary objects, sacred objects, and objects of cultural

11  patrimony, 25 U.S.C. § 3001(3); 43 C.F.R. § 10.1(b), sets forth in relevant part a

12  complex repatriation process through which lineal descendants and culturally

13  affiliated tribes can recover human remains and cultural objects removed from tribal

14  lands when those remains and objects were in the "procession or control" of federal

15  agencies as of NAGPRA's effective date, November 16, 1990.[9]  25 U.S.C. §§ 3003-

16  3004;  Pueblo of San Ildefonso v. Ridlon, 103 F.3d 936, 938 (10th Cir.1996).

17  Notwithstanding that the plaintiff does not raise any independent NAGPRA claim in

18  its complaint and argues that ARPA, not NAGPRA, controls the disposition of the

19  human remains and cultural items at issue, the Court concludes for purposes of the

20  pending motion that NAGPRA is applicable to this action.

21      The gist of the plaintiff's argument regarding NAGPRA's non-applicability is

22  that NPS has never had lawful possession or control over the items as they remain

23  the plaintiff's property.   For purposes of NAGPRA, a federal agency has

24  _____

[9]

25      The plaintiff alleges in its complaint that the NPS removed the remains and
26  objects at issue from Navajo Nation tribal lands before the enactment of NAGPRA.

- 6 -

"possession" if it has "physical control of human remains, funerary objects, sacred objects, or objects of cultural patrimony with a sufficient legal interest to lawfully treat the objects as part of its collection[,]" and it has "control" over such items if it has "a legal interest ... sufficient to lawfully permit [it] to treat the objects as part of its collection[.]" 43 C.F.R. § 10.2(a)(3)(I) and (ii).  The defendants argue, and the Court agrees, that the statute establishing the Monument provides the NPS with "legal interest" over the human remains and cultural objects removed from the Monument sufficient to meet NAGPRA's possession or control requirement because the statute specifically grants the NPS broad authority to administer the Monument "so far as it applies to the care, maintenance, preservation and restoration of the prehistoric ruins, or other features of scientific or historical interest within the area[.]" 28 U.S.C. § 445b.

In order for the NPS' action at issue to constitute final agency action for APA judicial review purposes, the action must mark the consummation of the NPS' decision-making process, *i.e.* the action must not be merely tentative or interlocutory in nature, and it must be one by which rights or obligations have been determined or one from which legal consequences will flow. Bennett v. Spear, 520 U.S. 154, 177-78 (1997).  At the very least, the first finality factor has not been met here.  The NPS' position set forth in Superintendent Clark's letter, whether it be its decision not to immediately return the human remains and cultural objects to the plaintiff or its decision that it is legally required to comply with the NAGPRA repatriation process, does not constitutes the culmination of the NPS' decision-making process regarding the ultimate disposition of the human remains and cultural objects.  All the NPS in effect did through the letter was to deny the plaintiff interim relief; the reviewable final agency action will come when the NPS completes its NAGPRA review process and

- 7 -

determines to whom the human remains and cultural objects should be repatriated. *See* Ecology Center, Inc. v. United States Forest Service, 192 F.3d 922, 925 (9th Cir.1999) (Court noted that steps taken leading to an agency action do not constitute the required final agency action); Na Iwi O Na Kupuna O Mokapu v. Dalton, 894 F.Supp. 1397, 1405 (D.Hawai'i 1995) (Court concluded that because the federal defendant had not yet made a decision in accordance with the NAGPRA provisions regarding the repatriation of human remains, there was no final agency action to challenge under the APA.)   If the NAGPRA process results in a final NPS determination that some or all of the human remains and cultural objects should not to be repatriated to the plaintiff, because, for example, the NPS determines that the items are culturally affiliated with some other tribe notwithstanding the geographical location where they were found, which is purely speculative at this time, then the plaintiff may challenge that decision under the APA. *See* 5 U.S.C. § 706(2) (providing in part that a reviewing court may hold unlawful and set aside agency action found to "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "contrary to constitutional right,"or "in excess of statutory jurisdiction, authority," etc. )

B. Unlawfully Withheld Action

The plaintiff further argues that the Court has jurisdiction over this action because the NPS' decision not to immediately return the human remains and cultural objects to the plaintiff and to proceed with an ultimate disposition determination for those items without the plaintiff's consent in violation of ARPA is judicially reviewable pursuant to 5 U.S.C. § 706(1), which permits the Court to "compel agency action unlawfully withheld[.]"  The Court disagrees.

An APA claim under § 706(1) is viable only if the federal agency has failed to

take a discrete agency action that it is legally required to take. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004).  The plaintiff, which contends that only it has the right to determine the ultimate disposition of the human remains and cultural objects inasmuch as they constitute archaeological resources under ARPA that were removed from Navajo "Indian lands," asserts that the mandated discrete action at issue is the refusal of the NPS to comply with ARPA by returning the remains and cultural objects to the plaintiff.

The Court agrees with the defendants that ARPA does not require that the NPS immediately repatriate the human remains and cultural objects to the plaintiff. Assuming that ARPA even applies to this action[10], the portion of ARPA relied on by the plaintiff, 16 U.S.C. § 470dd, does not create an immediate nondiscretionary repatriation duty on the part of the NPS.  The statute provides in relevant part that the Secretary of the Interior may promulgate regulations providing for the ultimate disposition of archaeological resources removed from public lands or Indian lands, and that any ultimate disposition pursuant to such regulations of archaeological resources "excavated or removed from Indian lands shall be subject to the consent of the Indian or Indian tribe which owns or has jurisdiction over such lands."  The Secretary of the Interior has promulgated limited regulations under ARPA dealing with the custody of archaeological resources. See 43 C.F.R. § 7.13.  While these

---

[10]

ARPA was enacted in 1979 for the purpose of protecting archaeological resources and sites on federal public lands and Indian lands.  Under ARPA, an "archaeological resource" means "any material remains of past human life or activities which are of archaeological interest," which includes "graves, human skeletal remains[.]" 16 U.S.C. § 470bb(1).  But in order for any item to be protected under ARPA, such item must be "at least 100 years of age." Id. The Court notes that the plaintiff nowhere specifically alleges in its complaint that any of the 303 sets of human remains and other cultural objects at issue are at least 100 years old.

1 regulations provide in part that "[a]rchaeological resources excavated or removed

2 from Indian lands remain the property of the Indian or Indian tribe having rights of

3 ownership over such resources," § 7.13(b), they more specifically provide that the

4 Secretary may promulgate regulations providing "for the ultimate disposition of

5 archaeological resources, and for standards by which archaeological resources

6 shall be preserved and maintained, when such resources have been excavated or

7 removed from public lands and Indian lands." § 7.13(c).  The defendants state, and

8 the plaintiff does not dispute, that while implementing regulations are being

9 developed, no regulations have been promulgated to date under ARPA specifically

10 addressing the ultimate disposition of archaeological resources excavated or

11 removed from Indian lands.[11]  Since 16 U.S.C. § 470dd, the portion of ARPA relied

12 on by the plaintiff, does not specifically provide a nondiscretionary repatriation duty

13 on the part of the defendants in the absence of any controlling regulation, the Court

14 concludes that there has not been any withheld agency action that is reviewable

15 under the APA at this time.  Therefore,

16        IT IS ORDERED that the defendants' Motion to Dismiss (Doc. 13) is granted

17 to the extent that this action is dismissed in its entirety as barred by the sovereign

18

19              [11]

20        As the defendants note, the regulations that the Secretary of the
   Interior has promulgated under ARPA that specifically deal with the disposition of
21 Native American human remains and cultural objects excavated or removed from
   public lands or Indian lands provide for disposition pursuant to the dictates of
22 NAGPRA. *See* 43 C.F.R. § 7.13(e) (dealing with such items removed from public
   lands); 25 C.F.R. § 262.8(a) (dealing with such items removed from Indian lands
23 under the control of the Bureau of Indian Affairs, which is the agency having
   control over the vast majority of Indian lands.)  While neither regulation governs
24 here, they support the defendants' contention that the NAGPRA process is
   appropriate for determining the disposition of the human remains and cultural
25 objects at issue.

26

immunity of the United States.  The Clerk of the Court shall enter judgment accordingly.

DATED this 12th day of February, 2013.

Paul G. Rosenblatt
United States District Judge